THOMAS *et al. v.* ST. LOUIS & C. R. Co. *et al.*

(*Circuit Court, S. D. Illinois.* February 9, 1889.)

EMINENT DOMAIN—FERRIES—RECEIVERS—SALES.

While the Illinois water-craft act (act July 1, 1877) may prohibit the petitioner railroad companies from condemning land on the Ohio river at Cairo for purposes of a ferry landing, yet where a leasehold interest in the land sought to be condemned is in the custody of receivers of this court, and all parties interested are before the court, leave will be granted the petitioners to purchase the unexpired leasehold interest in the land mentioned in the petition, if the sale will not be detrimental to the interests of stockholders and creditors of the insolvent.

Condemnation Proceedings.

Before GRESHAM and ALLEN, JJ.

*John M. Butler* and *Samuel P. Wheeler,* for complainant.

*E. L. Russell, John M. Lansden,* and *Greene & Humphrey,* for defendants.

GRESHAM, J., (*orally.*) The Cairo Transfer Company leased to the Cairo, Vincennes & Chicago Railroad Company, for 10 years, a piece of land on the bank of the Ohio river at Cairo, upon which the latter company constructed an inclined track, to enable it to transfer its cars to roads terminating on the opposite side of the river, and receive cars from that side. The St. Louis & Cairo Railroad Company owns a line of road terminating at Cairo, which it leased to the Mobile & Ohio Railroad Company, whose road terminates on the south side of the river, immediately opposite Cairo, and these two latter companies are seeking by this proceeding to condemn part of the land owned by the Cairo Transfer Company, and the leasehold interest of the Cairo, Vincennes & Chicago Railroad Company in the same, to enable the petitioners to construct an incline and landing for the transfer of their cars, and thus avoid the alleged unreasonable charges which are exacted by the owners of the present transfer facilities. The legislature of Illinois, on July 1, 1877, passed an act known as the "Water-Craft Act," the first section of which reads:

"Be it enacted by the people of the state of Illinois, represented in the general assembly, that all railroad companies incorporated under the laws of this state, having a terminus upon any navigable river bordering on the state, shall have power to own for their own use any water-craft necessary in carrying across such river any cars, property, or passengers transported over their line, or transported over any railroad terminating on the opposite side of such river, to be transported over their lines: provided, that no right shall exist under this act to condemn any real estate for landing for such water-craft, or for any other purpose, and this act shall only apply to such railroad companies as own the landing for such water-craft."

After describing the lands sought to be condemned the petition states:

"That the business and operation of your petitioner's railroad requires the construction of a railroad incline on the Ohio river, in the city of Cairo, for the transfer of cars across said river and the Mississippi river, and to connect

with similar railroad inclines of other railroads now in use on the other side of such river."

This is not an effort to condemn land to enable the petitioners to construct an incline down to an existing ferry landing. There is no ferry landing or structure upon the ground sought to be condemned, and the petitioners are therefore seeking to condemn land for a landing, as well as land to reach a landing. When this question was before us last year, (*Railroad Co.* v. *Thomas*, 34 Fed. Rep. 774,) I stated that I thought it was within the water-craft act, and I still think so. The district judge, however, is of opinion that the facts stated in the petition do not bring it within that act. It may be that the act is not an obstacle to the condemnation of land to enable a railroad company to reach an established ferry, as such a proceeding would not be an appropriation of land for a landing; but that question is not before us. It is conceded that there is no ferry landing or superstructure upon the land sought to be condemned, and it follows that the petitioners are seeking to appropriate land for a landing, which is expressly prohibited by the statute. If it be true —as we think it is—that, independent of the water-craft act, railroad companies in this state may condemn land bordering upon the Ohio and Mississippi rivers, and construct thereon wharf-boats, warehouses, and docks, when necessary in the management of their business, this is not a proceeding for that purpose. The land leased by the Cairo Transfer Company to the Cairo & Vincennes Railroad Company, including the lands sought to be condemned, is now in the custody of Tracy & Thomas, as receivers of this court under the lease, more than one-half of which has expired. Presumably the lessee is insolvent, and it will be necessary to sell its property and franchises, and distribute the proceeds among creditors according to their rights and equities, unless some plan of reorganization shall be agreed upon which will render a sale unnecessary. The fee and leasehold, and all parties interested in both, are before the court, and if it is satisfied that the petitioners need the land for the purpose stated, and that the interest of the lessee in it can be sold without injury to the rights of others, the court can and should direct its sale. Such action should not be taken, however, if it would injure the just rights or interests of creditors and stockholders. Leave will be granted the petitioners, if they desire it, to make application to purchase the unexpired leasehold interest in the land described in the petition. Section 1, art. 11, Const. Ill., declares that the charter of corporations shall not be extended by special laws, and section 22, art. 4, declares that the general assembly shall pass no local or special laws granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise. If prior to the passage of the water-craft act railroad corporations were not authorized to own ferry landings and ferry-boats, and operate them as provided in that act, then it conferred the right or franchise to do so upon such companies only as then owned land on the rivers bordering the state, and such as might thereafter be able to acquire it by purchase. All companies then not owning land upon the banks of such rivers, and unable

to purchase it, were denied the right to exercise the new franchise. The act was undoubtedly intended to benefit a particular road or roads against all others. In the very nature of things, the conditions which entitled corporations to enjoy the additional privilege or franchise can exist at very few points on the borders of Illinois, and it is admitted in argument that Cairo is the only point at which they do exist. If the petitioners are unable, as they seem to be, to avail themselves of the benefit of the water-craft act by purchasing land, then they are denied the right of transferring their cars to the opposite side of the river, unless they pay tribute to the owners of the present facilities on such terms as they choose to impose. While the water-craft act does not purport to be a special or local statute, it is within the spirit of the constitutional provisions referred to, and we are inclined to believe that it is also within their letter. Courts cannot be expected to look with favor upon legislation which is intended to benefit a particular road or roads as against all others and the public; but, inasmuch as this question has not been discussed by counsel, we are not prepared to hold that the act is unconstitutional. No order will be entered until the court is informed that the parties are unable to agree upon a settlement.